HARRY BROWN, INC., Appellant,

v.

William Grady McBRYDE, Individually and d/b/a Kilgore Appliance and Refrigeration Service, Appellee.

No. 1396.

Court of Appeals of Texas, Tyler.

Sept. 10, 1981.

Edward N. Maher, Jr., Longview, for appellant.

R. L. Whitehead, Jr., Longview, for appellee.

SUMMERS, Chief Justice.

This is an appeal from a take-nothing judgment in a general contractor's suit for damages allegedly resulting from a breach of a construction subcontract.

Appellant Harry Brown, Inc. (Brown) was the general contractor employed by the Sabine Independent School District, Gladewater, Texas, for the construction of an expansion to the Sabine Elementary School in Liberty City, Texas. On or about May 15, 1978, Brown entered into a subcontract with appellee William Grady McBryde, indi-

vidually and d/b/a/ Kilgore Appliance and Refrigeration Service (McBryde), for the installation of air conditioning, heating and ventilating, as per plans and specifications which were "subject to the approval of the Architect, Owner, and/or General Contractor." The total contract price was $15,800.00. About one month later on June 19, 1978, McBryde informed Brown that he would be unable to perform the contract due to the fact that the bid which he submitted to and which was accepted by Brown, and which formed the basis of the contract, called for the installation of Rheem equipment. McBryde thereafter discovered this equipment was at variance with that specified in the contract. On June 21, 1978, Brown entered into a contract with Longview Mechanical Contractors for performance of the work at a contract price of $20,320.00. Thereafter, Brown as plaintiff, filed this suit against McBryde seeking to recover damages for an alleged breach of the contract.

After a non-jury trial, the court entered a take-nothing judgment against Brown. From this judgment Brown appeals.

We affirm.

The case is before us with a statement of facts but without findings of fact and conclusions of law. Although appellant Brown made demand for the court to file written findings of fact and conclusions of law, none were filed and no objection thereto was made. Failing to comply with Rule 279,[1] appellant cannot now complain of the trial judge's failure to file findings and conclusions. *Vanity Fair Properties v. Billingsley*, 469 S.W.2d 453, 455 (Tex.Civ.App. —San Antonio 1971, writ ref'd n. r. e.); *Nordheim Independent School District v. Johnson*, 597 S.W.2d 48, 49–50 (Tex.Civ. App.—Corpus Christi 1980, no writ).

Where, as here, specific findings of fact have not been filed, but appellant brings forward a statement of facts, it is presumed upon appeal that the trial judge found every issuable fact proposition necessary to sustain the judgment, if such fact proposition is raised by the pleading (or by trial

outside the pleadings by express or implied consent) and is supported by the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977); *Loomis v. Sharp*, 519 S.W.2d 955, 957 (Tex.Civ.App.—Texarkana 1975, writ dism'd); See also, 4 R. McDonald, Texas Civil Practice § 16.10 n. 88 (1971) and authorities there cited. The appellate court must affirm the judgment if it can be sustained on any reasonable theory supported by the evidence and authorized by law. *Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex. 1962); *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978).

Appellant Brown predicates its appeal on three points of error. In its first point Brown asserts that the trial court erred in rendering judgment for McBryde in the absence of pleadings or evidence that the contract was ambiguous or entered into as a result of fraud, accident or mutual mistake. In its second point Brown contends that the clear terms of the contract do not support the judgment. We find no merit in either of these points.

In McBryde's first amended original answer, he alleged (1) a general denial; (2) that the contract was without consideration, or alternatively, that the consideration had failed in whole or in part; (3) that the parties failed to have a meeting of the minds as to what was required under the terms of such contract and therefore there was no consideration for same; and (4) further denied liability on the contract pleading as follows in Paragraph III thereof:

Defendant would further show unto the Court that the contract made the basis of this cause of action came about as a result of Defendant having given Plaintiff a bid based upon the installation of certain types of equipment. When the plans and specifications were delivered to Defendant, the equipment which was called for in such plans and specifications were not as Plaintiff had represented to Defendant nor were they as Defendant had quoted to Plaintiff. Therefore, De-

---

1. All references to rules are to Texas Rules of Civil Procedure unless noted otherwise.

fendant could not perform under the contract because there was no actual meeting of the minds as to the terms and conditions of the contract.

Rule 45 provides, inter alia, as follows: All pleadings shall be so construed as to do substantial justice. Rule 67 provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In the instant case, no special exception was leveled at McBryde's pleadings, and appellant failed to timely object to any of the defensive testimony. Brown's objection on the ground that McBryde had made "no allegation of an ambiguous contract" was not raised until after all such evidence had been received. We believe that McBryde's pleadings, when considered in their entirety and construed to do substantial justice, pled facts which constituted, and were sufficient to put the plaintiff on notice of, the defenses of mistake and fraud. Since the facts were alleged, technical words were not necessary.

Furthermore, since the record reflects that the defenses of mistake and fraud were tried by implied consent and without any objection, they shall be treated as if they had been raised by the pleadings. Rule 67.

By failing to timely object, or by moving to strike on the basis of surprise, Brown waived any objection he might have to such testimony.

The record reveals that Brown, as general contractor, sought bids for the air conditioning, heating and ventilating work for the project; that after one bidder withdrew his bid Brown solicited bids from McBryde and two others; that McBryde was contacted by Brown for a bid sometime between the 1st and 15th of April, 1978; that McBryde's bid was prepared on April 18, 1978 in McBryde's office with Brown present; that the bid was based on the Rheem equipment which McBryde had listed; that the bid when completed was for the sum of $15,852.08.

McBryde testified that he informed Brown he was a Rheem dealer and that was the type of equipment he was bidding; that before drawing up the bid he went over the plans with his duct installer and ascertained from the Rheem distributor that the equipment needed would be available; that although the units called for in the specifications were Lennox or four other brands, Brown knew specifically that he (McBryde) was bidding Rheem equipment and registered no objection; that he told Brown he could do the job for the price stated in the bid if he could use the Rheem equipment; that Brown stated, "he didn't care what I used"; that upon being handed the bid in McBryde's office Brown said the amount allocated to duct work made his bid too high and walked out saying he would have someone from Marshall do the work.

In his testimony Brown testified that he did not agree with McBryde that he could furnish any certain kind of machinery and that he told McBryde that whatever he proposed would have to be submitted to the architect for approval.

The record further reflects that about a month after McBryde submitted his bid Brown called and informed him that he could do the Sabine school job; that Brown thereupon prepared the contract in his office and it was later executed by both parties about May 15, 1978; that sometime after the signing of the contract Brown informed McBryde that he (McBryde) had to make a submittal to the architect for approval and it was then that McBryde discovered that Rheem equipment would not qualify; that McBryde tried without success to secure other qualified equipment at the same price as Rheem; that McBryde notified Brown who suggested that he try using Lennox which was one of the brands named in the specifications; that McBryde informed Brown he would still do the job and install Lennox equipment if the bid could be raised to take care of the increased cost of that equipment; that Brown refused this offer and on June 19, 1978, McBryde notified Brown that he could not do the work for the price stated in the contract because he could not use the equipment

specified in his bid proposal; that on June 21, 1978, Brown employed Longview Mechanical Contractors to do the work at approximately the same price which McBryde had offered to do the job with Lennox equipment.

McBryde testified that he told Brown that by using Lennox equipment the job would cost around $20,000 to $21,000; that he would figure the cost exactly and use Lennox if the contract price could be renegotiated to allow for the increased cost; that Brown refused and said, "no . . . I have a contract with you and you're going to do the job" and picked up his plans and left.

■ Appellee McBryde contends that the principle of unilateral mistake of fact is applicable to this case. We agree. It was recognized in *James T. Taylor, Etc. v. Arlington Ind. School Dist.*, 160 Tex. 617, 335 S.W.2d 371, 373 (1960) that "equitable relief will be granted against a unilateral mistake when the conditions of remedial mistake are present." The conditions were stated to be:

> . . . (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i. e., rescission must not result in prejudice to the other party except for the loss of his bargain . . .

Those conditions are present in the instant case. In addition the court in *Taylor* further noted: " . . . There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties . . . "

■ Relief for a remedial mistake of fact is warranted in the case at bar. It is conclusively shown that McBryde operated under a misapprehension of material fact. McBryde submitted his bid and entered into the contract under the mistaken belief that Rheem equipment would qualify for installation under the contract. The contract was terminated within about a month after its execution. No money had been expended on the contract by either party. Appellee offered to perform the contract with more expensive equipment which would qualify under the specifications if appellant would agree to adjust the price to take care of the increased cost; that although appellant refused this offer, Brown relet the contract to another contractor two days later at approximately the same price which appellee had offered to perform with the more expensive equipment.

W. T. Cotten, an employee of one of Longview Mechanical Contractors' subcontractors, testified that there was no delay in the construction and the equipment [for air conditioning, heating and ventilating] was on the job site long before it was needed. In reviewing the record to determine whether the evidence supports the judgment and the implied findings of fact incident thereto "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Renfro Drug Company v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1951).

Appellant's first and second points are overruled.

In its third point of error Brown contends that the trial court erred in admitting parol evidence over its objection.

■ Brown's objection made at trial after the introduction of all testimony was as follows:

> Your honor, I object to 9 tenths of the testimony if not all in it's [sic] entirety on the premise that there's no allegation of an ambiguous contract and on the legal theory that if that's the case the only thing that can be introduced to affect it one way or the other is a mutual mistake or fraud and . . .

The trial court stated the testimony had been received without objection up to this point and overruled this late objection. In order to be considered on appeal, an objection to the admissibility of evidence must be timely made, that is it must be made when the evidence is offered, not after it has been

601

received. 4 Tex.Jur.3d Appellate Review § 122 (1980). Furthermore, Brown has failed to point out specifically, either in its brief or at trial, the objectionable evidence to which it alluded. An objection to evidence must be clear and specific and, to be available on appeal, should be addressed to that particular part of the evidence that is subject to objection. 4 Tex.Jur.3d Appellate Review §§ 119 and 123 (1980).

Additionally, parol evidence was admissible on the issues of fraud, *Dallas Farm Machinery Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233 (1957), and mistake, *Estes v. Republic National Bank of Dallas*, 462 S.W.2d 273, 275 (Tex.1970), which were either tried under the pleadings or by implied consent of the parties. Rule 67; *Niles v. Harris County Fresh Water Supply District No. 1–A*, 339 S.W.2d 562, 563 (Tex.Civ.App.—Waco 1960, writ ref'd).

Appellant's third point is overruled.

The judgment of the trial court is affirmed.